# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOHAMMED KAMRUL-ISLAM, | : | CIVIL NO. 3:16-CV-02566 |
| Petitioner, | : | |
| | : | (Judge Caputo) |
| v. | : | |
| GRAIG A. LOWE, *et al.*, | : | (Chief Magistrate Judge Schwab) |
| Respondents. | : | |

## **REPORT AND RECOMMENDATION**

### I.  Introduction.

Petitioner, Mohammed Kamrul-Islam ("Kamrul-Islam"), petitions for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania.  Kamrul-Islam contends that his detention by U.S. Immigration and Customs Enforcement (ICE) is unconstitutional and seeks immediate release. Respondent, Craig A. Lowe, Warden at Pike County Prison, maintains that Kamrul-Islam has not yet exhausted his administrative remedies with regard to his custody status and thus his petition should be denied.  Because we agree that Kamrul-Islam has not exhausted administrative remedies, we recommend that his petition be dismissed without prejudice.

## II. Factual Background and Procedural History.

Kamrul-Islam, a native and citizen of Bangladesh, entered the United States without inspection on March 2, 2015. *Doc. 5-1* at 6. He was then encountered by a Border Patrol Agent and issued a Notice and Order of Expedited Removal. *Id.* at 5-6, 61. Kamrul-Islam was taken into ICE custody on March 3, 2016. *Id.* He claimed fear for being removed to Bangladesh, and an Asylum Officer found his fear of persecution and torture credible. *Id.* He was then served with a Notice To Appear in Immigration Court. *Id.* at 6-7. On June 10, 2015, the Immigration Judge (IJ) held Kamrul-Islam's request for bond in abeyance until the IJ could conduct a hearing on the merits of Kamrul-Islam asylum claim, and Kamrul-Islam then appealed the IJ's bond decision to the Board of Immigration Appeals (BIA). *Id.* at 10, 12. The BIA denied the appeal because it did not present a significant jurisdictional question and did not fall within the cases over which the BIA exercised jurisdiction for an interlocutory appeal. *Id.* at 22. On February 3, 2016, the IJ denied Kamrul-Islam's motion for bond redetermination, finding no material change as to Kamrul-Islam's circumstances. *Id.* at 23. On February 29, 2016, another IJ ordered Kamrul-Islam removed, denied his applications for asylum and withholding of removal under the UN Convention Against Torture (CAT), but granted his application for deferral of removal under CAT. *Id.* at 54-55. The IJ concluded that the Bangladesh National Party ("BNP"), the political party of which

Kamrul-Islam was a member and supporter, was a Tier III terrorist organization, and Kamrul-Islam had not shown, by clear and convincing evidence, that he did not know and should not have known that it was a terrorist organization. *Id.* at 53. Thus, the IJ concluded that there were reasonable grounds to believe that Kamrul-Islam was a danger to the security of the United States. *Id.* Both Kamrul-Islam and ICE appealed the IJ's decision in a timely manner. *Doc. 2* at 41 and *Doc. 5-1* at 57. By a decision dated March 30, 2016, ICE determined that Kamrul-Islam would remain in custody pending the outcome of the appeal before the BIA. *Doc. 5-1* at 61-62. Kamrul-Islam made a motion for bond redetermination on April 28, 2016, which was denied by the IJ on May 9, 2016. *Id.* at 66, 73.

On December 30, 2016, Kamrul-Islam filed a petition for a writ of habeas corpus with this Court (*doc. 1*), and we issued an Order directing the respondent to show cause why Kamrul-Islam should not be granted habeas corpus relief and granting Kamrul-Islam leave to reply (*doc. 3*). The respondent filed a timely response (*doc. 5*) and Kamrul-Islam replied to that response (*doc. 6*).

On March 9, 2017, the BIA reversed the IJ's determination that the BNP was an undesignated terrorist organization, and it remanded the case to the IJ for further proceedings and for entry of a new decision. *Doc. 7-1*.

On April 6, 2017, Kamrul-Islam notified this Court of the decision rendered by the BIA, and he requested that this Court issue a writ of habeas corpus releasing

him from custody or directing the Immigration Court to immediately conduct a bond hearing. *Doc.* 7. On April 7, 2017, this Court issued an Order directing the respondent to file a response to Kamrul-Islam's most recent filing, and we ordered that Kamrul-Islam may reply to that response. *Doc.* 8. The respondent filed a timely response (*doc. 9*), to which Kamrul-Islam did not reply.

## III. Discussion.

### A. Kamrul-Islam Is Required to Exhaust Administrative Remedies Prior to Bringing his Habeas Petition.

Before an alien brings a petition for a writ of habeas corpus, he is required to exhaust the available administrative remedies, and his failure to do so can result in the denial of his petition, as the Third Circuit found in *Okonkwo v. I.N.S.*, 69 F. App'x 57 (3d Cir. 2003). In *Okonkwo*, the Third Circuit affirmed the District Court's denial of the petitioner's habeas petition because he failed to exhaust the administrative remedies then available to him. *Id.* at 60.

In *Pierre v. Sabol*, this Court followed the Third Circuit's holding, and noted that "[w]e cannot consider his (the habeas petitioner's) request for relief until he has exhausted his administrative remedies." *Pierre v. Sabol*, No. 1:11-CV-2184, 2012 WL 2921794, at *1 (M.D. Pa. July 17, 2012). In support of its decision, this Court also cited a group of cases regarding similarly-situated petitioners: "*Leonardo* [*v. Crawford*], 646 F.3d 1157, 1159 (9th Cir. 2011) (alien failed to

exhaust administrative remedies when he did not appeal the IJ's bond determination to the BIA before seeking habeas relief in district court); *Nepomuceno v. Holder*, No. 11–6825, 2012 WL 715266, at *3 (D.N.J. Mar.5, 2012) (court would not consider 2241 petition challenging ICE custody when the petitioner failed to show that he had exhausted his administrative remedies by appealing the IJ's bond decisions to the BIA) (citing *Leonardo*); *Bautista v. Sabol*, No. 11–1611, 2011 WL 5040894, at *4 (M.D.Pa. Oct.24, 2011) (2241 petition would not be entertained when the petitioner had not sought the available administrative remedy of parole); *Berge v. Bureau of Immigration & Customs Enforcement's Interim Field Office Director*, No. 06–581, 2006 WL 1896184, at *1 (M.D.Pa. July 7, 2006) (2241 petition challenging continued detention dismissed for failure to exhaust when the petitioner failed to appeal to the BIA)." *Pierre*, 2012 WL 2921794, at *1.

In *Quinteros v. Sabol*, this Court made a similar decision as to judicial refrainment from revisiting the merits of the Immigration Judge's determination "prior to satisfactory showings of exhaustion and finality." *Quinteros v. Sabol*, No. 4:15-CV-02098, 2016 WL 6525295, at *1 (M.D. Pa. Nov. 3, 2016). This Court noted that "[abundant] policy reasons undergird such rules as exhaustion and finality—expertise, finality, and efficiency are a few that come to mind." *Id.*, at *2 (citing *Pierre*, 2012 WL 2921794, at *1).

5

Kamrul-Islam is being detained pending a decision on whether he is to be removed from the United States under 8 U.S.C. § 1226(a). ICE may detain an arrested alien under § 1226(a), or it may release such an alien on bond. *Id.*[1] An alien held under § 1226(a) may seek release on bond by requesting an initial bond redetermination by an IJ. 8 C.F.R. 1003.19(b) & (c). After that, he may request a subsequent bond redetermination, which shall be made in writing and shall be considered only upon a showing that his circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e). An IJ's decision on a bond redetermination may be appealed to the BIA. 8 C.F.R. § 236.1(d)(3). And the BIA's decision to detain or release him on bond is discretionary and is not subject to judicial review, as provided by 8 U.S.C. § 1226(e):

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Kamrul-Islam recently received a ruling in his favor made by the BIA, and he argues that the IJ has not issued a new decision or conducted a bond redetermination since that ruling. *Doc. 7* at ¶ 5. In its ruling, the BIA reversed the IJ's determination that the BNP was an undesignated terrorist organization, and

---

[1] Contrast the discretionary detention under § 1226(a) with the mandatory detention under § 1226(c). Note that Kamrul-Islam does not dispute the respondent's contention that he is detained under § 1226(a), rather § 1226(c).

remanded his immigration case to the IJ. *Doc. 7-1* at 9. However, the BIA made no mention of bond redetermination in that ruling.

To sum it up, administrative exhaustion requires a habeas petitioner like Kamrul-Islam to appeal the IJ's bond redetermination decision to the BIA. Or, he may request another bond redetermination if he believes that his circumstances have materially changed.

**B. Nothing Indicates that Kamrul-Islam Has Requested Another Bond Redetermination Based on Materially Changed Circumstances.**

So far, nothing in the record indicates that Kamrul-Islam has requested another bond redetermination following the BIA's most recent ruling.

Kamrul-Islam did not appeal the IJ's May 9, 2016 denial of bond to the BIA. Kamrul-Islam contends that the exhaustion of administrative remedies is inapplicable in this case due to the BIA's previous refusal to hear the interlocutory proceeding. *Doc. 6* at 6. But that BIA decision was based on the scheduling of the bond hearing. Kamrul-Islam has not pointed to anything that raises a reasonable inference that the BIA would not hear an appeal of an actual bond determination. Moreover, he is in a different situation now. He could request a new bond redetermination in writing to the IJ pursuant to 8 C.F.R. § 1003.19(e) based on materially changed circumstances, i.e., the BIA's recent decision on the BNP. If he is unsatisfied with the IJ's decision, he could then appeal it to the BIA pursuant

7

to 8 C.F.R. § 236.1(d)(3). Before he goes through the procedure in the administrative system, this Court should not intervene. Nothing indicates that Kamrul-Islam has taken any administrative actions subsequent to the BIA's ruling on his immigration case, which may amount to materially changed circumstances; moreover, he did not reply to the respondent's response of April 17, 2017, arguing that he failed to exhaust administrative remedies. This Court has no further information about the status of his immigration case or bond redetermination. In the absence of such information, we conclude that Kamrul-Islam has failed to exhaust administrative remedies.

### IV. Recommendation.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that Kamrul-Islam's petition for a writ of habeas corpus be dismissed without prejudice.

> The Parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge

shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **14th day of June**, **2017.**

*S/Susan E. Schwab*
Susan E. Schwab
United States Chief Magistrate Judge